The clerk informs us that in the three cases to be argued, all counsel are present and accounted for, and that we are ready to proceed with 21-123 Abada v. Delta Air Lines. So we'll hear from counsel for the appellant. Good afternoon, Your Honors. May it please the Court, Daniel Dubian, the appellant, Abraham Abada. Mr. Abada, former passenger service representative for Delta Air Lines, alleges here that Delta engaged in a pattern of discriminating and retaliating behavior based on ethnicity and his ethnicity, Jewish, Hebrew, and Israeli. Ms. Delta terminated Mr. Abada's employment due to his religion, ethnicity, and national origin, and his association with co-workers and customers of this same religion and ethnicity, in violation of Title VII. The allegation is made that the amended complaint, when viewed under the appropriate standard on motion to dismiss, meet the plausibility standard in rising above a speculative level. Further, in analyzing this employment discrimination case under the McDonald-Milnes framework, the appellant has alleged facts that allow the Court to infer that they are the essential elements of a primary patient case. Specifically here, when you view the totality of those circumstances, there is an inference of discriminatory motive in Delta's actions to terminate Mr. Abada's employment. First, there is a direct link between Mr. Abada's termination and the targeted investigations outlined by Delta in a Talking Points Memorandum distributed amongst employees, which shows an inference of discriminatory motive. This Talking Points Memorandum specifically targets for investigations by Delta managers and HR employees who have given a travel companion pass to customers who frequent two routes, one from New York City to Tel Aviv, Israel, and one from Atlanta to Tel Aviv, Israel, specifically targeting these employees for investigations based on misuse of these travel companion passes. Excuse me. When employees have shared their travel companion pass with Jewish, Hebrew, and Oriental Israelis persons who are traveling out of these flights, Delta has accused these employees of selling their companion passes and engaged in these targeted employee investigations, resulting in punishments such as suspension and termination. In addition, Delta has targeted for investigation these employees whose travel companions have flown on this route into and out of Tel Aviv, Israel. The destination highlighted in the Talking Points Memorandum is reasonable to infer that this was targeted at employees of Israeli, Hebrew, and Jewish descent. Mr. Vada-Rosalevsky is personally aware of other individuals that were wrongfully and falsely accused and investigated by Delta for violating this travel companion pass, not just himself. In the complaint, there are a lot of allegations made on information and belief that seem to be drawn from considerations raised in the Fukelman litigation. Is that right? That is correct. As well as, I mean, the essence seems to be there was a pattern and practice, a culture developed at Delta. But it seems to me that those were far removed from the actual investigation and termination that is alleged to have occurred with regard to your client for abuse of the companion flying privilege. Gabby, you're trying to set the scene, but I saw no link between those statements that were drawn from this other litigation and the termination here. No basis for inferring that there was a link. For example, there was no decision maker who made an adverse comment. Where is the linkage here? The linkage is directly in the quotes from the talking point memorandum that state that Delta managers and their human resources department was conducting these investigations. That is the same investigation that resulted in the dismissal of Mr. Abada. But is there any allegation that a particular decision maker terminated Mr. Abada? It had a discriminatory motive in terminating Mr. Abada. It had made discriminatory comments. The decision maker, him or herself? The decision maker themselves? No. No. But it's on the points of the memorandum that states that it was their human resources that they were targeting for investigations these particular raps to tell these. Well, why is it really reasonable to draw anything from that other than they potentially had a good basis for believing that there was an abuse of the companion travel privilege on those routes? Right. And if they're on a motion that says there's a legitimate basis for Mr. Abada's termination, he denies that he was using the travel companion pass. Yes, but the allegations are still rather conclusory that there was a discriminatory basis for his termination based on Delta's decision to look into those abuses on those routes. Well, targeting these specific routes, it's reasonable to infer. You know, Israel has a 91 percent Jewish population. Mr. Abada supports this with allegations that are upon information that he saw other individuals with the same nationality, national origin, being subjected to these investigations for misuse of travel. Am I right that I'm not quite sure how the record contains this, but I understood from what I read that there were individuals of other nationalities or ethnic origins who were also terminated as a result of abuse of the travel privilege, and they were not of Jewish, Hebrew, or Israeli origin. Is that correct? Correct. The two other individuals that were part of the combined motion to dismiss that resulted in the dismissal of this action were not of that national origin. They had given their travel companion passes to individuals of Jewish, Israeli national origin. So their claims were, you know, based on their association with individuals of those national origins under Title VII. Okay. Thank you. So it was focused on individuals flying those routes. And when you look at the totality of circumstances, the remarks that were made and the culture that is set forth on what seems to be planned amongst Delta, in particular, the direct remarks that were made by employees and coworkers and went unpunished regarding that specific flight to Tel Aviv, when that's reading its totality, an inference can be drawn that there was a discriminatory motive in targeting these flights that ultimately terminated their Shabbat. Okay. Thank you. Thank you. Can you please report? My name is Ira Rosenstein, counsel for Delta Independent. I have Kelly in this case, Laura Morgan-Lewis, and Doc is, I'll use at least a few seconds of my time to say how grateful I am to be here in person in front of you. And to be in any court after many years of not. Mr. Rosenstein, could I ask you to approach the microphones a little bit more, please? Of course. Thank you. So I don't think that I can improve on the thoughtful opinions from Judge Matsumoto in this case or the very similar opinions by Magistrate Judge Kuo and Judge Chen in the Kugelin case that's been referred to in papers and has also been referred to here earlier this morning. And I also believe that the Court's questions to counsel just a few minutes ago hit on the critical issue that resulted in the dismissal of this case under Article 12. There simply is no link between the very aggressive pleadings about anti-Semitic behavior at Delta, which Delta would, at the appropriate time, deny. But for purposes of this motion and where we are today, there simply is no link between those allegations, serious as they are, and Mr. Abada's treatment by Delta. Mr. Rosenstein, though, at this stage, there is a minimal burden, and we are obligated to draw all reasonable inferences in the plaintiff's favor. And, you know, he's alleged that the airline has focused on certain routes, right, between Atlanta and Tel Aviv, yeah, and for abuse of the companion travel privilege on those routes in particular. So why isn't that enough, since that's what was the basis for his termination? No, it's a great question, and I'll try to answer it as best as I can with an analogy. When a company sees that there is some behavior going on, especially an airline on a particular flight, then obviously they need to investigate that. And in this case, the talking points that are referred to refer to an investigation of behavior on a Tel Aviv flight. And only that. And so if, for example, Delta had or any airline had a reason to be concerned about behavior on a flight to Croatia or a flight to Nigeria or a flight to Japan, then they would investigate those flights. And the fact that they have a memorandum that describes what they're going to do in their investigation that mentions that the investigation involves flights from New York or Atlanta to Tel Aviv can't then be really converted into an anti-Semitic act any more than the other examples would result in discrimination against Croatians or Nigerians or Japanese people. Am I right in understanding that the talking points memorandum is not attached to the complaint? Kelly has not been attached to the complaint. They did quote from it. And so the court is constrained, I think, as the district court was, to what is in the four corners of the complaint. And Judge Matsumoto addressed the talking points very directly in her decision, and she correctly, I think, said there's nothing in this that describes anti-Semitic behavior. This is simply a factual description of the investigation that involves a Tel Aviv flight. And she also correctly cited two cases for the idea that it is a leap to assume that because a flight is from New York, Atlanta, to Tel Aviv, that somehow that has to do with targeting people who are Jewish or Israeli. Israel may well be 91 percent Jewish. I'm not sure if that's true. But I think that the court could certainly take judicial notice that many people who travel to Israel on the flight from Delta to Tel Aviv are not Jewish, and that that area is a place that is holding to many religions by Judaism and also of interest to tourists in many different backgrounds. So the concept that just because you're looking at a flight from Atlanta to Tel Aviv, you're targeting Jews is, I think, far-fetched. You might as well say that we were targeting Atlantans or New Yorkers in the same way, not since those were also in the memo. All right, thank you. I hope that long-winded estimation addressed the question. Thank you. The critical piece to connect the dots, if Rapelli was going to be able to do that successfully, would be to show that the decision-makers here in his termination somehow were influenced in some way by discrimination. And again, to respond to the question about the defender, we certainly understand, Delta understands, that the burden on a defendant under Rule 12, but there must be a plausible linkage in the complaint, in the forecourt as a complaint, that would allow the claim to be nudged, nudged in the words of Iqbal and Tawakoli, nudged from conceivable to plausible. And here, the judges below, again, both in Fugleman and, more importantly in this case, correctly determined that there was no evidence, even though Rapelli was given multiple chances to amend the complaint. Interestingly, again, the Fuglen case was amended four times, I think, and this one was amended twice. And the reason that the Fuglen case has some relevance, perhaps, is because if you compare the complaints, you'll see that they are almost carbon copies of each other. And in fact, as the Court correctly pointed out, some of the allegations about the general culture of Delta are lifted directly from the Fugleman pleading, or perhaps other pleadings, but they're not on first-hand knowledge by Mr. Abada. And I've got one other interesting piece that I hadn't realized until I was preparing for this argument. I don't think Mr. Abada actually claims that he personally was targeted because of his association with somebody who was Jewish or Israeli. Mr. Abada has pledged that he is himself Israeli and Jewish, but I don't think he pled in the complaint that he was targeted because of his association. The complaint doesn't give the name or any information about the person that he was alleged to have given his companion pass to or lost control of, I think, is the terminology that Delta uses. And it doesn't allege that at all. We have a conclusory statement that he didn't do anything wrong or that his companion didn't do anything wrong. I think it's a complaint. And we have a statement that he did cooperate in their investigation. And it is beyond the complaint about the circumstances of departure, but Pelley does allude to the fact that the reason given to him by Delta was that he failed to cooperate in the investigation and then lost control of this unnamed, unknown individual who's not alleged to be a Jewish. We can jump to the conclusion that he probably was, but that's literally jumping to a conclusion. He's not there on the complaint. So I think his claim is actually limited to whether Delta discriminated against him because he's Jewish or Israeli. And again, as the Court quotably pointed out, the action that resulted in Mr. Abad's termination also resulted in discipline to other abilities, many of which were not Jewish or Israeli, and including these two, I'll call them co-plaintiffs, since their motion to dismiss was decided together by the same decision, were not Jewish or Israeli. And that, to me, is fatal, really, to the claim. And I think that Judge Matsumoto would believe the same. So unless there are other... I'll have 45 seconds, but... Well, no, Mr. Rosenstein, not so fast, Mr. Rosenstein. Now, Judge Matsumoto invoked the standard of speculativeness, did she not? She did. And what did she say about that? Well, I believe what Judge Matsumoto said was that a plaintiff must do more than simply say what he thinks could have happened on information and belief, and that a court can't rely on an information and belief pleading to overcome a Rule 12 motion. Kelly's response to that, in their papers at least, was that they did respond in some fashion to things that were on personal knowledge, but I don't think that they actually addressed what Judge Matsumoto was talking about. They did not and could not address the cultural arguments that they made to try to piece together a concept of discrimination. They cite some cases that talk about how difficult it is for a plaintiff in a discrimination case to find concrete evidence of discrimination, because employers aren't going to write what's discriminated against somebody. That's going to be hard to find. And they talk about cases where you can rely on indirect evidence and get some pieces to get together a kind of H.E. case. And that's true. You can do that. They just didn't do that either. What they relied on was a series of pure speculation, second-hand knowledge of cultural issues that could not have even been Mr. Abada's personal knowledge. Mr. Abada was a passenger service agent working in the airport. The allegations in Fugleman by far appear to be about flight attendants working on flights. Mr. Abada, who had been on a flight, doesn't allege he was on a flight. Pure speculation. Also relies on comments made, allegedly, about passengers, not about employees, and certainly not about him. So there's everything that's in there, whether it's the first stage of culture or the second stage of what was actually on his personal knowledge, is complete speculation or not relevant. Thanks very much. You've reserved some time. Thank you. Thank you. Mr. Abada is entitled to plead and be in his motion to dismiss standard by alleging facts on the information in the leaf, as well as those he's personally aware of. Here we have the talking points of the Miranda, which is quoted from directly, which is Delta's own words. And as counsel pointed out, a defendant would, you know, indicate something spatially discriminatory in a written memo. You can draw an inference from them, particularly pointing out the one destination in which these individuals of Mr. Abada's national origin and religion frequently flew into and out of. Do you have a case you want to cite to us that says that on information and belief pleadings is sufficient to satisfy the Iqbal standard for a plausible complaint? Well, here he doesn't rely solely upon information and belief statements. Mr. Abada, it says in the paragraph that he specifically alleges that he witnessed the results of these investigations. Well, but my concern is that the deficiencies identified by Judge Matsumoto were that you were speculating as to critical matters in your information and belief pleadings. And so are you suggesting that without those pleadings, you still survive a motion to dismiss without the information and belief pleadings? Yes. How? What do you plead on personal knowledge that states a plausible claim? Help me remember. Sure. So just for example, in paragraph 34 of the claim, Mr. Abada was personally aware that without any prior warning notification, specifically targeted individuals, co-workers, that they themselves are Jewish or ethnic and surrounding, or shared their tribal past with Jewish individuals, and they were targeted for these investigations. That led to the unwarranted discipline. Just a couple quickly talking points. I learned that Mr. Abada personally witnessed and was aware of what the results of those investigations were, and that they were biased specifically towards this particular class of individuals. In addition to those specific allegations, which he is personally aware of and alleged to not matter, he does allege the totality of the circumstances, including the remarks that were made regarding these flights. He also does allege that he's personally aware of the derogatory term used to describe the type of flights that's happening. So he can support the allegations which are sufficient to overcome the motion. See, I thought, and this is why I want you to clarify it for me, that the basis for his pleading, that he was fired under circumstances giving rise to an inference of discriminatory intent, comes from the talking points memorandum. I thought that was the factual basis for his claim. Is that wrong? That's a portion, yes. He was subject to an investigation of describing the talking points memorandum. So we'll deal with the sufficiency of the talking points memorandum to support your claim. Then I thought he also alleged the various anti-Semitic and racist statements that he said were directed at other employees or passengers. But anything beyond those two? I mean, those are two categories. I'm not saying anything beyond those two. Right. So then thereafter, and in his complaint, there's a section of facts relevant to Plaintiff Abada. That's where he then alleges that he was personally aware that the outcome of these investigations, that those individuals who were subject to these investigations as a result of the talking points memorandum, were of Jewish-Israeli national origin. He himself was one of them. He alleged that he was personally aware that these other individuals were subject to bias investigations. All right. Thank you. There's no further questions. Thank you very much. Thank you. Mr. Rosenstein, I'll give you 15 or 20 seconds to even this out. I'm sorry to interrupt. The public's view was that in the last complaint, that there's no actual allegation that Mr. Abada actually did have any connection and personal knowledge about the other people who were terminated. And, in fact, the other people who were terminated this way, as reported, were not Jewish-Israelis. Thank you. Thanks very much. We'll reserve the decision.